UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Respondent, | ) | |
| | ) | |
| v. | ) | Case No. 2:17-cr-20049-SLD-EIL |
| | ) | |
| RANDY WILLIAMS, | ) | |
| | ) | |
| Defendant-Petitioner. | ) | |

<u>ORDER</u>

Before the Court are Defendant-Petitioner Randy Williams's: motion to compel his former attorney to provide his case file, ECF No. 82; refiled motion to compel accompanied by a letter, ECF No. 85; Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody ("2255 Motion"), ECF No. 86; motion for discovery, ECF No. 87; motion for equitable tolling, ECF No. 88; motion requesting counsel and an evidentiary hearing, ECF No. 91; motion for counsel, ECF No. 96; motion to amend the record, ECF No. 97; motion for counsel, ECF No. 98; motion for status, ECF No. 101; motion to amend and supplement, ECF No. 106; motion for release from custody, ECF No. 108; and second motion to amend and supplement, ECF No. 110.  For the reasons that follow, the 2255 Motion is DENIED IN PART and the Court RESERVES RULING in part; the motion to compel and motion for discovery are DENIED WITHOUT PREJUDICE; the refiled motion to compel is MOOT as it is duplicative of the first motion to compel; the motion for equitable tolling is MOOT; the motion to amend the record and the first motion to amend and supplement are MOOT; the second motion to amend and supplement is DENIED; the motion for status is MOOT in light of this Order; the motions for counsel are GRANTED; and the motion for release from custody, construed as a motion for compassionate release, is DENIED.

1

## BACKGROUND

### I.  District Court Proceedings

Williams was indicted on one count of aiding and abetting obstruction of commerce by robbery in violation of 18 U.S.C. § 1951—in other words, Hobbs Act robbery.  Indictment, ECF No. 1.  The robbery at issue occurred on July 28, 2016.  *Id.* at 1.  On that day, "two men[— Thomas James and Andrew Nunn—]entered a Sprint store with a gun, threatened and zip-tied all witnesses, grabbed some merchandise, and fled the store in two vehicles."  *United States v. Williams*, 949 F.3d 1056, 1058 (7th Cir. 2020).  Williams was alleged to be one of the getaway drivers.  James, Nunn, and another individual involved in the robbery, Jaevontae Williams ("Jaevontae") were charged in a separate case.  *See United States v. James*, No. 2:17-cr-20009-SLD-EIL.

Attorney David Rumley was appointed to represent Williams.  *See* Sept. 18, 2017 Text Order.  A jury trial on Williams's charge began on June 12, 2018.  June 12, 2018 Min. Entry.  United States District Judge Colin Bruce presided over the trial.  *See id.*  Williams was found guilty on June 14, 2018.  *See* Verdict, ECF No. 36.

After trial but before sentencing, the case was reassigned to this Court.  *See* Aug. 20, 2018 Text Only Order Reassigning Case.  Sentencing was held on October 15, 2018.  Oct. 15, 2018 Min. Entry.  The presentence investigation report ("PSR") indicated that Williams was a career offender and, accordingly, had an offense level of 32 and a criminal history category of VI.  *See* PSR ¶¶ 32, 41, ECF No. 40.  Williams had no objections to the PSR.  Sent'g Hr'g Tr. 2:24–3:9, ECF No. 64.  The statutory maximum sentence for his conviction was 240 months.  *Id.* at 3:11–13.  With a total offense level of 32 and a criminal history category of VI, his Sentencing Guidelines range for imprisonment was 210 to 240 months (capped by the statutory maximum).

*Id.* at 3:10–14.  The Government recommended a sentence of 240 months.  *Id.* at 8:2–5.

Williams requested a sentence at the low end of the Guidelines range.  *Id.* at 17:14–20.  The

Court sentenced Williams to 180 months of imprisonment and three years of supervised release.

*Id.* at 30:9–12, 31:3–5.  He was ordered to pay restitution to Sprint in the amount of $32,121.81.

*Id.* at 30:13–18.

## II.    Appellate Proceedings

Williams appealed.  Not. Appeal, ECF No. 47.  He raised two arguments regarding his

trial based on *ex parte* communications that Judge Bruce had with members of the United States

Attorney's Office for the Central District of Illinois ("USAO").  *Williams*, 949 F.3d at 1058–59.

These communications, which are summarized in the Seventh Circuit's opinion in Williams's

appeal, *see id.* at 1059–60, became public after Williams's trial but before sentencing, *id.* at

1058.  Williams argued that Judge Bruce violated Williams's due process rights and 28 U.S.C.

§ 455(a) by presiding over his trial.  *Id.* at 1058–59, 1063.  Williams also argued that this Court

improperly found that he was a career offender and that was subject to a firearm enhancement.

*Id.* at 1059.

The Seventh Circuit held that "Judge Bruce did not violate Williams's due process rights

by presiding over his trial" because the *ex parte* communications did not establish evidence of

actual bias or a probability of actual bias "too high to be constitutionally tolerable."  *Id.* at 1061–

63 (quotation marks omitted).  As to the § 455(a) claim, the Government conceded a statutory

violation.  *Id.* at 1063.  But the Seventh Circuit found that the error was harmless, so it affirmed

Williams's conviction.  *Id.* at 1066.

Williams did not object to his classification as a career offender at sentencing.  On

appeal, the Government conceded that Williams did not qualify as a career offender but argued

that there was no plain error because the Court indicated that it would impose the same sentence even absent the career offender application. *Id.* at 1066. The Seventh Circuit agreed. *Id.* at 1070 ("It is clear from her thorough assessment that the district court would have imposed the same sentence irrespective of the career offender provision."). The Seventh Circuit also found that the Court "did not err in applying the firearm enhancement to Williams." *Id.* at 1070. Williams had not objected to the PSR, and the PSR and trial testimony "support[ed] the district court's finding that another participant in the crime, Thomas James, used a firearm during the crime." *Id.* at 1070–71. As James's conduct was reasonably foreseeable to Williams since they were part of "a group of individuals [who] were robbing cellular telephone stores in the same manner," *id.* at 1071, James's conduct was attributable to Williams, *id.* at 1070.

## III.    Post-Judgment Proceedings

Both while his appeal was pending and after the Seventh Circuit's mandate issued, Williams filed numerous requests for documents in this Court. *See, e.g.*, Jan. 22, 2020 Letter, ECF No. 75; Feb. 18, 2020 Letter, ECF No. 76. In response, the Court entered text orders indicating that if Williams wanted copies, he could "seek them from former Defense counsel." *E.g.*, Feb. 25, 2020 Text Order. After one of the requests for documents, *see* Mar. 26, 2020 Letter, ECF No. 79, the Court directed Williams's appellate counsel, Alex Kasner, to file a status report regarding Williams's request, Mar. 31, 2020 Text Order. Kasner indicated that he did not have "access to files from [Williams's] trial or discovery" and that requests for documents would "properly [be] addressed to" Rumley. Kasner Status Report 2, ECF No. 80.

Williams then filed the currently pending motions to compel Rumley to turn over his case file. The Court directed Rumley to file a status report addressing the matters raised in Williams's motions. Feb. 8, 2021 Text Order.

4

Before Rumley responded, Williams filed his 2255 Motion and a motion for discovery. In the motion for discovery, he first seeks an order requiring the Government to produce documents, emails, letters, memoranda, and any other communications to defense counsel concerning: jailhouse phone recordings; an alibi defense; exculpatory evidence; other plea agreements; and alibi witness testimony and affidavits.  Mot. Discovery 2.  Second, he seeks to have "ALL Attorneys" answer interrogatories he wrote.  *Id.* at 3.  Third, he seeks all correspondence from the Government to defense counsel concerning evidence, statements, affidavits, recorded phone conversations, interviews, alibi defenses, and exculpatory evidence. *Id.*  Williams simultaneously filed a motion for equitable tolling.  *See generally* Mot. Tolling.

Rumley filed his status report the next day.  He indicated that he signed a protective order obligating him to keep discovery materials in his possession and asked the Court to grant him leave to send the discovery to either Williams or the Government.  Status Report ¶¶ 4, 6, ECF No. 89.  He also "claim[ed] privilege for [his] work product in th[e] case." *Id.* ¶ 8.

The Government filed its response opposing Williams's 2255 Motion on August 2, 2021. Resp., ECF No. 94.  Williams filed his reply in November 2021.  Reply, ECF No. 100.  While the 2255 Motion has been pending, Williams has filed multiple motions for counsel, multiple motions to amend his 2255 Motion, and a motion for release from custody.

## DISCUSSION

The Court will appoint counsel for Williams to assist with discovery; counsel will also be given an opportunity to file an amended 2255 motion.  However, in the interest of efficiency, the Court resolves the pending motions it can and dismisses the claims in Williams's 2255 Motion that can be resolved without further information.

### I.       2255 Motion

Liberally construing his 2255 motion, accompanying memorandum in support, and reply, Williams contends that Rumley provided ineffective assistance of counsel in violation of the Sixth Amendment on the following bases: (1) he failed to explore whether a detective provided conflicting testimony in state and federal court and whether he could impeach the detective; (2) he failed to object to application of the career offender guidelines; (3) he did not object to the firearm enhancement at sentencing; (4) he failed to file a motion for a new trial based on Judge Bruce's *ex parte* communications with the USAO; (5) he failed to challenge a traffic stop; (6) he failed to investigate an alibi defense; (7) he failed to object when a juror fell asleep; (8) he failed to object that the robbery had no effect on interstate commerce; (9) he failed to object to prosecutorial misconduct; (10) he allowed a conflict of interest; (11) he failed to object to errors in the PSR; (12) he failed to challenge the notice of arrest; (13) he failed to properly impeach or cross-examine James, Jaevontae, and Amanda Kincaid; (14) he failed to show that Williams's tattoos were not in the video footage; (15) he failed to impeach Jaevontae and James about their conflicting testimony as to where the robbery was planned; and (16) he failed to object to Joel Smith being present throughout the whole trial.  Mem. Supp. 2255 Mot. 1–16, ECF No. 86 at 13–32; Reply 4–41.[1]

### a.   Legal Standard

A prisoner in federal custody may move the court that imposed his sentence to vacate, set aside, or correct it.  28 U.S.C. § 2255(a).  "[R]elief under § 2255 is an extraordinary remedy because it asks the district court essentially to reopen the criminal process to a person who already has had an opportunity for full process."  *Almonacid v. United States*, 476 F.3d 518, 521

---

[1] Because the reply is not paginated and it is split over numerous ECF attachments, the Court uses the page numbers of the PDF created when one opens ECF No. 100 and its attachments together.

(7th Cir. 2007).  Accordingly, such relief "is available only when the 'sentence was imposed in violation of the Constitution or laws of the United States,' the court lacked jurisdiction, the sentence was greater than the maximum authorized by law, or it is otherwise subject to collateral attack." *Torzala v. United States*, 545 F.3d 517, 521 (7th Cir. 2008) (quoting 28 U.S.C. § 2255(a)).

The Sixth Amendment guarantees criminal defendants the right to the effective assistance of counsel.  U.S. Const. amend. VI.  Claims of ineffective assistance of counsel are subject to the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984).  This test requires a defendant to show that his counsel's performance "fell below an objective standard of reasonableness" and that he suffered prejudice as a result.  *Id.* at 688, 692.  The court applies "a strong presumption that decisions by counsel fall within a wide range of reasonable trial strategies." *United States v. Shukri*, 207 F.3d 412, 418 (7th Cir. 2000) (quotation marks omitted).  The defendant "must rebut this presumption by proving that his attorney's representation was unreasonable under prevailing professional norms and that the challenged action was not sound strategy." *Kimmelman v. Morrison*, 477 U.S. 365, 384 (1986).  To demonstrate prejudice, the defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

### b.  Analysis

Many of Williams's grounds of ineffective assistance of counsel can be denied immediately as no additional information could change the outcome.

### i.  Ground 2: Career Offender Status

Williams's second argument—that Rumley was ineffective for failing to object to his classification as a career offender at sentencing, Mem. Supp. 2255 Mot. 5–6—is clearly meritless.  Regardless of whether Rumley should have made the objection, there is no prejudice from his failure to do so.  Williams successfully argued on appeal that he did not qualify as a career offender.  *See Williams*, 949 F.3d at 1066–68.  But the Seventh Circuit affirmed his sentence and found there was no plain error because the Court made clear that it "would have imposed the same 180-month sentence regardless of whether Williams qualified as a career offender."  *Id.* at 1068–70.  For the same reason, the Court finds that there is no prejudice from Rumley's failure to object to the career offender enhancement at sentencing.  As the Court stated at sentencing: "Even if [career offender] didn't [apply], this is still the sentence that I would impose, based on all the 3553(a) factors."  Sent'g Hr'g Tr. 29:11–15.

### ii.  Ground 3: Firearm Enhancement

Williams's third argument—that Rumley was ineffective for failing to object to the sentencing enhancement for the firearm on the basis that "the only evidence at all concerning the gun used in the robbery[] was that the gun was a B.B. gun," Mem. Supp. 2255 Mot. 7, is also meritless because Williams cannot show prejudice.  The argument that Williams should not have received the firearm enhancement was raised on appeal.  *See Williams*, 949 F.3d at 1070.  But the Seventh Circuit found that there was evidence to support the Court's "finding that another participant in the crime, Thomas James, used a firearm during the crime."  *Id.*  There was testimony at trial from three witnesses to the crime and there was James's statement to probation officers that the gun he used during the robbery was a real firearm.  *Id.* at 1070–71.  The only contrary evidence Williams points to is James's trial testimony that after the robbery, the person

who gave him the gun told him that it was a BB gun.  Mem. Supp. 2255 Mot. 7 (referring to Trial Day 2 Tr. 111:6–25, ECF No. 73).

Even if counsel had objected to the enhancement and pointed to James's contradictory trial testimony, the Court still would have found Williams eligible for the enhancement.  The government need only prove that a sentencing enhancement is warranted by a preponderance of the evidence.  *United States v. Hines*, 449 F.3d 808, 815 (7th Cir. 2006).  Almost all of the evidence pointed toward finding that the gun was a real firearm.  Even if the Court considered James's contrary statement at trial that someone told him the gun was not a real gun, the Court could still find by a preponderance of the evidence that the gun was real and that the sentencing enhancement was warranted.

### iii.  Ground 4: Motion for New Trial

Williams's fourth ground of ineffective assistance of counsel—that Rumley was ineffective because he failed to file a motion for a new trial based on Judge Bruce's communications with the USAO, Mem. Supp. 2255 Mot. 8–9—is similarly meritless.  On appeal, Williams argued that Judge Bruce violated his due process rights and violated 28 U.S.C. § 455(a).  *See Williams*, 949 F.3d at 1058–59.  The Seventh Circuit found there was no due process violation and that although Judge Bruce violated § 455(a), it was harmless, and Williams was not entitled to a new trial.  *Id.* at 1063, 1066.  A motion for a new trial on these bases would have been denied, so there is no prejudice from failing to file such a motion.

### iv. Ground 8: Interstate Commerce Element[2]

Ground eight of the 2255 Motion—that counsel was ineffective for failing to argue that the alleged robbery did not affect interstate commerce, Mem. Supp. 2255 Mot. 14—is also meritless. The Government argues the evidence at trial established that the robbery affected interstate commerce and any argument that it did not would have been frivolous. Resp. 30–31.

One of the elements of Hobbs Act robbery is that "the conduct criminalized must affect or attempt to affect commerce in some way or degree." *Taylor v. United States*, 579 U.S. 301, 308 (2016). The government need only show "that the charged crime had a *de minimis* or slight effect on interstate commerce." *United States v. Carr*, 652 F.3d 811, 813 (7th Cir. 2011) (quotation marks omitted). "The government [can] meet[] its burden by showing that a defendant robbed an enterprise which engages in interstate commerce, thus depleting the assets of the enterprise and limiting its ability to purchase more goods." *Id.*

A phone that a Sprint customer had just purchased was found in the car Williams was driving (a Monte Carlo). *See, e.g.*, Trial Day 1 Tr. 66:2–20, ECF No. 72. Williams argues that because the phone belonged to the customer and because the phone never crossed state lines, the crime he was alleged to have committed did not affect interstate commerce. Mem. Supp. 2255 Mot. 14. But the evidence at trial showed that the robbers, who Williams was found guilty of aiding and abetting, stole more than just the customer's phone—they stole other phones and devices from the Sprint store. Trial Day 2 Tr. 13:5–24 (one of the store employees testifying that the robbers stole phones and tablets from the store); *id.* at 38:5–9 (district manager of the Sprint

---

[2] In his reply, Williams raises two new claims in conjunction with this claim: first, that counsel should have argued that his federal prosecution violated the Double Jeopardy Clause of the Fifth Amendment because a prior state charge was dismissed due to lack of evidence; and second, that counsel should have argued that his indictment was improperly amended because the customer's cellphone that was stolen and tracked to the Monte Carlo Williams was driving was not mentioned in the indictment but was proved at trial. Reply 24. Claims cannot be raised for the first time in a reply. *Cf. United States v. Feinberg*, 89 F.3d 333, 341 (7th Cir. 1996) ("The reply brief is not the appropriate vehicle for presenting new arguments or legal theories to the court.").

store testifying that "iPhone 6s was the primary device that was taken" during the robbery).  And there was evidence that Sprint was engaged in interstate commerce.  *Id.* at 5:10–6:10 (employee testifying that he had parts shipped from out of state into the store and that he serviced iPhones which were manufactured in China); *id.* at 31:14–15 (district manager testifying that Sprint's headquarters is near Kansas City); *id.* at 32:6–15 (district manager testifying that the store received Apple products manufactured in China and Japan and Samsung products manufactured in Korea).

Regardless of whether the customer's phone itself establishes the interstate commerce element—an argument the Court does not rule on—the evidence at trial regarding the Sprint store and the numerous phones that were taken from the store was more than sufficient to establish the interstate commerce element of Hobbs Act robbery.  Any motion by Rumley arguing that this crime did not affect interstate commerce would have been denied, so there is no prejudice from his failure to raise this argument.

### v.  Ground 9: Prosecutorial Misconduct

Williams also argues that Rumley was ineffective because he did not object to prosecutorial misconduct at trial.  Mem. Supp. 2255 Mot. 14.  He points to two specific statements by the prosecution that he believes Rumley should have objected to: first, "[t]he prosecutor started off by saying the getaway driver for the Monte Carlo was Andre Williams, then thru out trial the prosecutor switched up saying the Monte[ ]carlo was driven by" Randy Williams; and second, a statement that "[i]f there was any legitimate reason why this phone was next to this defendant a hour after a robbery occurred we would ha[ve] heard it."  *Id.*  (quotation marks omitted).  He also argues that the Government attorneys repeatedly falsely stated that the Monte Carlo belonged to him.  *Id.*; Reply 27.  He claims that these statements confused the jury

or were misleading, depriving him of a fair trial.  Mem. Supp. 2255 Mot. 14; Reply 27.  And he

argues that the statement about the reason for the phone being in the Monte Carlo infringed on

his right not to testify.  Reply 27–28.  The Government argues that the prosecutors' statements

were not evidence, that the prosecutors in fact argued that Williams was the driver, and that there

was nothing prejudicial about the statements.  Resp. 31–33.

The Court can resolve some of this claim now but reserves ruling on the impact of the

statement about the reason for the phone being in the Monte Carlo pending resolution of any

discovery issues and additional briefing.

"[I]mproper prosecutorial comments that do not implicate specific constitutional rights of

the accused, such as the right to counsel and the right to remain silent, are evaluated to determine

whether they deprived the defendant of a fair trial."  *United States v. Cotnam*, 88 F.3d 487, 498

(7th Cir. 1996).  The first statement Williams points to was clearly a one-time, unintentional

misstatement.  The prosecutor giving the opening statement was giving the jurors a preview of

what the evidence would show and said:

> You'll also hear that there's a second vehicle, a black SUV, that was in the area.
> And as the Monte Carlo pulls away from the Sprint Store, the SUV comes up behind
> the Monte Carlo and starts beeping for the Monte Carlo to pull over.  The Monte
> Carlo is driven by a man named Andre Williams.  In his passenger seat is Jaevontae
> . . . .  Jaevontae is the defendant's cousin and the owner of the Monte Carlo.  When
> they pull over on the side of the road, Thomas James and Andrew Nunn get out of
> the Monte Carlo with their big bag of cell phones and go into the SUV.  Jaevontae
> joins his cousin in the Monte Carlo.

Trial Day 1 Tr. 44:17–45:3.  This quote makes clear that the prosecutor meant to say that the

*SUV* was driven by a man named Andre Williams, not the Monte Carlo—it would not have made

sense to say that Jaevontae was a passenger in the Monte Carlo before the SUV signaled to the

Monte Carlo to pull over, and that he then got into the Monte Carlo after the Monte Carlo pulled

over.  Even if Rumley should have objected to this misstatement and even if the remarks could

somehow be found improper, there is no prejudice because this one-time misstatement did not deprive Williams of a fair trial. It was clear through the rest of the trial that the Government's theory was that Randy Williams was driving the Monte Carlo. And the jury was instructed that "[a]ny statements and arguments that the lawyers make are not evidence." *Id.* at 32:7–8.

For similar reasons, the Court finds there is no prejudice from failure to object to statements that the Monte Carlo belonged to Williams. Williams points to two such statements, Reply 27, and the Court has not located any others. Both of the statements Williams points to were in the Government's closing statement. In the first, the prosecutor was restating what Williams told police after he was arrested: "The defendant claims that that day he was working. He had to leave to go to Hoopeston because his baby was being born. And, gosh, all of a sudden his car's surrounded by three or four Illinois State Police Officers. . . . They take him out of his car. They search his car." Trial Day 3 Tr. 152:16–22, ECF No. 74. In the second, the prosecutor said that the iPhone stolen from the customer "ended up in Randy Williams' Monte Carlo." *Id.* at 141:21–24. It appears that these two references in closing to "Williams's Monte" Carlo or "his car" were simply a shortened way to say "the car Williams was pulled over in." It was never the Government's theory at trial that the car belonged to Williams. Indeed, the Government sought testimony from Jaevontae that the Monte Carlo was his vehicle, *see id.* at 6:8–9, and that it was registered in his friend Ciera Wilson's name, *id.* at 9:8–14. Even if these statements were improper, the Court fails to see how they deprived Williams of a fair trial.

### vi. Ground 10: Conflict of Interest

Williams's tenth ground of ineffective assistance of counsel—that Rumley "allowed a conflict of interest," Mem. Supp. 2255 Mot. 14—is also meritless. Williams's argument is that counsel should have objected to the fact that Ronald Langacker, who represented Williams at his

13

initial appearance and arraignment, *see* Sept. 13, 2017 Min. Entry, represented Williams at that hearing despite knowing he had a conflict of interest. Mem. Supp. 2255 Mot. 14. The Government responds that "Williams cannot show prejudice because Langacker's involvement (and clear conflict) in this case was not grounds for trial counsel to object, even if he could do so, prior to counsel's own appointment in this case." Resp. 33.

Langacker did have a conflict of interest, and he withdrew from representation as a result on September 18, 2017. Mot. Withdraw, ECF No. 10. But, as the Government notes, Rumley was not representing Williams while Langacker was representing him, so it is not clear how Rumley could have objected to Langacker's representation. And, moreover, Langacker did what he was supposed to do when he had a conflict of interest: he withdrew. Williams was appointed new counsel. The Court fails to see how this could be the basis for deficient performance or how Williams was prejudiced.

### vii.   Ground 11: Errors in the PSR

Williams's eleventh argument is that Rumley failed to object to errors in the PSR: specifically, that the PSR erroneously stated that James escaped from the Sprint store in a SUV; the PSR erroneously held Williams responsible for the acts of James, Nunn, Andre Williams, and Jaevontae even though he was not charged as part of a joint enterprise and they were not named in his indictment; and the PSR omitted that Williams had his GED and had completed other programs while he was previously incarcerated. Mem. Supp. 2255 Mot. 14–15; Reply 30–31.

Williams has identified one error. The offense conduct section of the PSR states that "it was determined that two getaway vehicles were involved" and that "James escaped from the Sprint store in an Isuzu sports utility vehicle, driven by Nunn" and that Jaevontae "was in the Chevrolet Monte Carlo vehicle driven by" Williams. PSR ¶ 12. But the evidence at trial was

that Andre Williams was driving the SUV, *see, e.g.*, Trial Day 2 Tr. 114:5–13, and that James

and Nunn escaped from the Sprint store in the Monte Carlo before later getting into the SUV, *id.*

at 123:9–126:16.  However, this is a minor factual error that only relates to which car other

individuals were in.  Even if counsel had objected to it and it had been corrected, there would

have been no impact on Williams's sentence.

Williams is incorrect that the PSR erroneously held him responsible for others' actions.

Offense conduct for purposes of the Sentencing Guidelines includes "all acts and omissions

committed, aided, [and] abetted . . . by the defendant."   U.S. Sent'g Guidelines Manual §

1B1.3(a)(1)(A) (U.S. Sent'g Comm'n 2016).  Williams was charged with aiding and abetting

"others known and unknown to the grand jury" who committed the Sprint robbery, so it was

proper to hold him responsible for the acts of those who directly committed the robbery.

Indictment 1–2.

Lastly, Williams's PSR did indicate that he received his GED, PSR ¶ 62, as well as that

he had obtained certificates in custodial work and painting, *id.* ¶ 63.  It also reflected that

Williams said he had received brief substance abuse treatment while in the Illinois Department of

Corrections.  *Id.* ¶ 60.  He cannot show prejudice from counsel's failure to investigate and ensure

that the PSR reflected more programs that he completed.  "[T]o establish that counsel's failure to

investigate mitigating evidence was prejudicial, the [2255] petitioner must present new evidence

that 'alter[s] the sentencing profile presented to the sentencing judge.'"  *Raufeisen v. United*

*States*, Nos. 17-cr-40049 & 20-cv-4171, 2023 WL 609913, at *4 (C.D. Ill. Jan. 27, 2023) (third

alteration in original) (quoting *Strickland*, 466 U.S. at 700).  "[T]he new evidence must differ in

a substantial way—in strength and subject matter—from the evidence actually presented at

sentencing."  *Id.* (quotation marks omitted).  Nothing Williams wishes his counsel would have

brought to the Court's attention that was not already brought to the Court's attention—namely that he completed some classes while in Illinois Department of Corrections custody like anger management and a computer class—are substantially different than the evidence the Court had before it. While the Court commends Williams for completing such programming, that information would not have changed his sentencing profile. To the extent there was additional information that could have been noted in the PSR, there was no prejudice from counsel's failure to seek its inclusion.

### viii.   Ground 16: Agent Joel Smith

Williams's last argument is that Rumley was ineffective for failing to object to Agent Joel Smith being present in the courtroom throughout the trial listening to all the witnesses' testimony. Mem. Supp. 2255 Mot. 16. The Government responds that case law clearly provides that "case agents are exempt from" witness sequestration rules under Federal Rule of Evidence 615. Resp. 39 (citing *United States v. Adamo*, 882 F.2d 1218, 1235 (7th Cir. 1989)).

The Government is correct. While the court must order witnesses to be excluded from the courtroom at a party's request, Fed. R. Evid. 615(a), the rule exempts certain people from exclusion including "one officer or employee of a party that is not a natural person if that officer or employee has been designated as the party's representative" and "any person whose presence a party shows to be essential to presenting the party's claim or defense," *id.* 615(a)(2), (3). The Seventh Circuit has held that an investigative agent for the prosecution is exempt from exclusion under Rule 615. *See Adamo*, 882 F.2d at 1235. The commentary to Rule 615 also indicates that the Advisory Committee understood that "investigative agents [we]re within the group specified under the second exception" to the exclusion rule—an officer or employee of a party which is not a natural person. Fed. R. Evid. 615 advisory committee's notes to 1974 enactment. Any

motion by Rumley to exclude Smith would have been frivolous, and counsel has no duty to make frivolous arguments.  *Fuller v. United States*, 398 F.3d 644, 652 (7th Cir. 2005).

## II.    Motions to Amend

Williams filed three motions to amend his 2255 Motion.  *See* Mot. Amend Record; First Mot. Amend & Suppl.; Second Mot. Amend & Suppl.  In his motion to amend the record, he merely seeks to cite a new case in support of his existing claim that his trial counsel was ineffective for failing to object to his career offender enhancement, Mot. Amend Record 1–2, and add additional argument about his counsel's failure to turn over his file, *id.* at 3–4.  As he does not seek to add any additional claims, the motion is MOOT.  In his first motion to amend and supplement, Williams again merely seeks to cite additional cases, *see* First Mot. Amend & Suppl. 1–6, so that motion is also MOOT.

In the last motion to amend, Williams seeks to add a claim that he was not a career offender under *United States v. Ruth*, 966 F.3d 642 (7th Cir. 2020), because one of his predicate convictions was an Illinois cocaine delivery charge.  *See, e.g.*, Second Mot. Amend & Suppl. 1; PSR ¶¶ 32, 38.  While the Seventh Circuit in *Ruth* held that an Illinois conviction for possession of cocaine with intent to distribute was not a predicate felony drug offense for purposes of a sentencing enhancement under 21 U.S.C. § 841(b)(1)(C) because Illinois law defines cocaine more broadly than federal law, *Ruth*, 966 F.3d at 647, 650, it held that the career offender guidelines define the term controlled substance to include state law offenses and, accordingly, that the defendant's cocaine conviction under Illinois law counted as a controlled substance offense for the Guidelines, *id.* at 654.  In other words, the holding from *Ruth* on which Williams seeks to rely does not apply to the career offender guidelines.  Allowing Williams to bring this claim would be futile, so the last motion to amend is DENIED.

### III.    Motion for Equitable Tolling

Williams filed a motion asking for equitable tolling of the statute of limitations.  *See*

*generally* Mot. Equitable Tolling.  But the Government does not contend that the 2255 Motion is

untimely, Resp. 3, so the motion for equitable tolling is MOOT.

### IV.    Motion for Release from Custody

Williams sent a letter to the Court which was filed as a motion for release from custody.

He indicates that the mother of his daughter lost her parental rights to Williams's daughter

because of neglect and other issues.  Mot. Release Custody 1.  He notes that a trial he was

involved in recently regarding his daughter "went in [his] favor" and reports that the judge from

the trial said that if Williams were to get released from prison, he could take custody of his

daughter.  *Id.* at 1–2.  Williams asks for a sentence reduction since he has served over half his

time.  *Id.* at 2.  He also states that he is suffering from carbon monoxide poisoning.  *Id.* at 1, 3.

The Court construes this as a motion for compassionate release.  Under the

compassionate release statute, a court can reduce a defendant's term of imprisonment if it finds

that "extraordinary and compelling reasons warrant such a reduction" "and that such a reduction

is consistent with applicable policy statements issued by the Sentencing Commission."  18

U.S.C. § 3582(c)(1)(A)(i).  United States Sentencing Guideline § 1B1.13 describes what

constitutes an extraordinary and compelling reason for a reduction.  U.S. Sent'g Guidelines

Manual § 1B1.13(b) (U.S. Sent'g Comm'n 2023).  Williams has not established that any of the

circumstances enumerated in § 1B1.13 are present.  While he indicates he has a medical

condition or impairment—the lasting effects of the carbon monoxide poisoning—he has not

demonstrated that it "substantially diminishes [his] ability . . . to provide self-care within the

environment of a correctional facility," *id.* § 1B1.13(b)(1)(B), or that he "requires long-term or

18

specialized medical care that is not being provided," *id.* § 1B1.13(b)(1)(C).  Moreover, while he indicates that his daughter's mother has lost her parental rights, he has not shown that his daughter's caregiver died or became incapacitated.  *Id.* § 1B1.13(b)(3)(A).  Finally, all the arguments about the illegality of Williams's sentence are appropriately decided with the 2255 Motion.

While the Court sympathizes with Williams's situation, it finds, based on the information before it, that Williams has not established extraordinary and compelling reasons for release.

## V.    Remaining Issues

In sum, the Court dismisses the following grounds of ineffective assistance of counsel: (2) Rumley failed to object to application of the career offender guidelines; (3) Rumley failed to object to the firearm enhancement at sentencing; (4) Rumley failed to file a motion for a new trial based on Judge Bruce's *ex parte* communications with the USAO; (8) Rumley failed to object that the robbery had no effect on interstate commerce; (9) Rumley failed to object to two alleged instances of prosecutorial misconduct; (10) Rumley allowed a conflict of interest; (11) Rumley failed to object to errors in the PSR; and (16) Rumley failed to object to Joel Smith being present throughout the whole trial.

The following ineffective assistance claims remain: (1) Rumley failed to explore whether a detective provided conflicting testimony in state and federal court and whether he could impeach the detective; (5) Rumley failed to challenge a traffic stop; (6) Rumley failed to investigate an alibi defense; (7) Rumley failed to object when a juror fell asleep; (9) Rumley failed to object to one statement as prosecutorial misconduct; (12) Rumley failed to challenge the notice of arrest; (13) Rumley failed to properly impeach or cross-examine James, Jaevontae, and Amanda Kincaid; (14) Rumley failed to show that Williams's tattoos were not in the video

footage; and (15) Rumley failed to impeach Jaevontae and James about their conflicting testimony as to where the robbery was planned. The Court has not addressed the merits of any of these claims. It simply finds that it would be more appropriate to resolve these claims after all discovery issues are resolved as they either could benefit from additional briefing or Williams's arguments reference evidence and information he has sought from his former counsel or the Government.

Given the length of time this 2255 Motion has been pending, the breadth of issues in the remaining claims, Williams's request for discovery, and the difficulties Williams has had obtaining information from his former counsel, the Court finds that the interests of justice require appointment of counsel. *See* 18 U.S.C. § 3006A(a)(2)(B). The motions for counsel are accordingly GRANTED. The Court will appoint counsel in a separate order. The Court DENIES WITHOUT PREJUDICE the first motion to compel and the motion for discovery. Counsel may file any necessary discovery motions, and the Court will give counsel the opportunity to file an amended 2255 motion. The second motion to compel is MOOT as it is duplicative of the first motion.

## CONCLUSION

Accordingly, Defendant-Petitioner Randy Williams's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody, ECF No. 86, is DENIED IN PART and the Court RESERVES RULING on the remainder. The motions for counsel, ECF Nos. 91, 96, & 98, are GRANTED. Counsel will be appointed in a separate order and a deadline will be set for any amended motion under § 2255. The motion to compel Williams's former attorney to provide his case file, ECF No. 82, and motion for discovery, ECF No. 87, are DENIED WITHOUT PREJUDICE. Counsel may file any necessary discovery motions. The

refiled motion to compel, ECF No. 85, is MOOT as it is duplicative of the first motion to

compel.  The motion for equitable tolling, ECF No. 88; motion to amend the record, ECF No. 97;

and motion to amend and supplement, ECF No. 106, are MOOT.  The second motion to amend

and supplement, ECF No. 110, is DENIED.  The motion for status, ECF No. 101, is MOOT in

light of this Order.  The motion for release from custody, ECF No. 108, is construed as a motion

for compassionate release and DENIED.

      Entered this 29th day of March, 2024.

s/ Sara Darrow
_____
SARA DARROW
CHIEF UNITED STATES DISTRICT JUDGE
